**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EILEEN RAPOSA, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>         v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., AUDI AG, a German corporation, and VOLKSWAGEN AG, a German corporation,<br><br>                      Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Eileen Raposa alleges for her class action complaint the following through her attorneys Squitieri & Fearon, LLP, on behalf of herself and all others similarly situated based on personal knowledge as to her own vehicle and upon information and belief as to all other matters.

**PRELIMINARY STATEMENT**

1.    Plaintiff brings this action on behalf of herself and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased any Audi vehicle models identified herein and/or Volkswagen vehicle models identified herein whose telematics equipment was rendered wholly or partially inoperable when the major wireless carriers phased at "3G beginning" in early 2022 ("Class Vehicles"). The Class Vehicles' internet enabled features such as roadside emergency safety features were rendered inoperable after the 3G phase out in 2022 due to defendants' use of obsolete telematics equipment they installed in the Class Vehicles. The Defendants are Volkswagen Group of America, Inc., ("VWGoA") d/b/a Audi of America, Inc., Audi AG, and Volkswagen AG ("VWAG") (collectively "VW" or

"Defendants"). The allegations herein are based on personal knowledge as to Plaintiff's own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

2.      This action was commenced to obtain recompense for Class Vehicles whose telematics were rendered inoperable when 3G as phased out, or repair, retrofit or replacement of 3G telematics.

## PARTIES

3.      Plaintiff Eileen Riposa ("Plaintiff") is a resident of the State of New York who purchased a 2018 Audi A5 in early-2018 from Audi as a "new vehicle."

4.      Defendant VWGoA is an entity incorporated in New Jersey with its principal place of business and headquarters at 220 Ferdinand Audi Drive, Herndon, Virginia 20171. VWAG selected New Jersey for the original site of VWGoA's headquarters and chose to have VWGoA incorporated as a New Jersey entity. According to its website VWGoA "houses the U.S. operations" of a worldwide family of brands including Volkswagen, Audi, Bentley, Bugatti, and Lamborghini brands, as well as the activities of its 6,000 employees and its subsidiary, VW Credit, Inc. Defendant designed, manufactured distributed, marketed, and sold the Class Vehicles, through its extensive network of authorized dealerships in the United States.

5.      Defendants, through various entities, market, distribute, warrants, and sells Volkswagen and Audi-branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including New Jersey and New York.

6.      Audi AG and VWGoA, under the supervision of defendant, Volkswagen AG, also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

7.      Defendant Volkswagen AG ("VWAG") is an entity incorporated in and registered to do business in Germany with its principal place of business at Berliner Ring 2, 38440, Wolfsburg, Germany. VWAG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Volkswagen, Skoda, and Audi-branded vehicles and parts for those vehicles worldwide, including the in the

United States.

8.      VWAG is the parent corporation of VWGoA and Audi AG, which are each wholly owned subsidiaries. VWAG is also the parent corporation of the United States manufacturing facilities for Volkswagen and Audi-branded vehicles. For all its United States subsidiaries, including VWGoA, VWAG and/or Audi AG provide all the equipment and information for the purpose of manufacturing, servicing, and repairing the Class Vehicles. Each year since 2016, VWAG has reported over 35 billion euros (or over 41 billion in U.S. dollars) of revenue from its North American activities via VWGoA and its network of authorized dealerships.

9.      Defendant Audi AG is an entity incorporated and registered in Germany with its principal place of business at Auto-Union-Str. 2 D-85045, Ingolstadt, Germany. The Ingolstadt facility encompasses both corporate offices which coordinate and supervise its worldwide operations, and a factory which produces over 300,000 vehicles a year, totaling over 30 million sq. ft. As of the end of 2020, over 43,000 employees worked at this facility. Audi AG under the supervision of its parent companies, designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi-branded vehicles and parts for those vehicles worldwide, including in the United States.

10.     The relationship between VWAG and VWGoA is governed by a General Distributor Agreement that gives VWAG the right to control nearly every aspect of VWGoA's operations related to both Volkswagen and Audi-branded vehicles—including sales, marketing, management policies, information and governance polices, pricing, and warranty terms.

## JURISDICTION

11.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332( d) and 1453, because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the putative Class consists of more than one hundred proposed class members; (3) the citizenship of at least one class member is different from Defendants' citizenship (New Jersey and Germany);[1] and (4) the aggregate amount in controversy by the claims of Plaintiff and the putative Class exceeds $5,000,000, exclusive of interest and costs.

12.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District, and the actions of the Defendants' that give rise to the claims against them in this action took place in part at least in this District.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

---

[1]     Because jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), even though Defendants are limited liability companies, each Defendant is a citizen of the states "where it has its principal place of business and ... under whose laws it is organized." 28 U.S.C. § 1332(d). That is, the rules applicable in traditional non-class diversity cases, under which the citizenship of limited liability companies would be determined by the citizenship of those companies' members, do **not** apply to this case. *Erie Ins. Exch. v. Erie Indemn. Co.*, 722 F.3d 154, 161 n.7 (3d Cir. 2013) (explaining that the Class Action Fairness Act "evinces an intent that suits by unincorporated associations be treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entity's principal place of business and not by the citizenship of its members").

14.     Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil

Procedure, on behalf of herself and a Class consisting of:

> All persons who purchased or leased, anywhere in the United
> States, an Audi model or Volkswagen model (collectively the
> "Class Vehicles") as follows:

Audi

| | |
|---|---|
| 2014-2016 | A3 |
| 2016-2018 | A3 e-Tron |
| 2013-2015 | Allroad/A4/A5/Q5 |
| 2016 | A4/Allroad |
| 2017-2018 | Allroad/A4 |
| 2016-2017 | A5 |
| 2018 | A5 |
| 2012-2015 | A6/A7/A8/Q3/Q7 |
| 2016-2017 | A8/Q5 |
| 2018 | A8 |
| 2015-2018 | Q3 |
| 2018 | Q5 |
| 2016 | Q7 |
| 2017-2018 | Q7 |
| 2019 | RS5 |

Volkswagen

| | |
|---|---|
| 2014-2019 | Passat, Jetta, Tiguan, Beetle |
| 2014-2017 | EOS |
| 2018-2019 | Atlas |
| 2018-2019 | Arteon |
| 2014-2019 | GolfR, GolfD; Golf;eGolf |
| 2014-2019 | GTI |
| 2014-2019 | Golf SportWagen |
| 2014-2018 | CC |

15.     Plaintiff reserves the right to amend the definition of the Class.

16.     This action is properly maintainable as a class action.

17.     There could be over one million members of the Class based upon Volkswagen's

own public sales figures of vehicles sold with 3G telematics. Accordingly, joinder of all

members is impractical.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among questions of law and fact in common to the Class are:

a.      Whether Defendants misrepresented the 3G Only Limitations features of Cars;

b.      The extent of the features which are inoperative when 3G is phased out;

c.      Whether Defendants in their marketing and sale of the Cars violated the NJCFA, N.J.S.A. §56:8-2, *et seq.* New York General Business Law Section 349 and similar laws of other states in which the vehicles were sold;

d.      Whether Defendants breached express and/or implied warranties when it delivered Cars with telematics systems with the 3G Only Limitations;

e.      The extent of damages/diminution in value/overcharges resulting from the 3G Only Limited Telematics in the Cars.

19.     Plaintiff's claims are typical of the claims of each member of each of the Class in that Plaintiff alleges a common course of conduct by Defendants toward each member of the Class. Specifically, Defendants violated the NJCFA, NYGBL and similar laws of other states and breached its warranties with each member of the Class. Plaintiff and the other members of the Class seek identical remedies under identical legal theories. There is no antagonism or material factual variation between Plaintiff' claims and those of the Class.

20.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who have extensive experience prosecuting class actions and who, with Plaintiff, is fully capable of, and intent upon, vigorously pursuing this action. Plaintiff has no interest adverse to the Classes.

21.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

22.     The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual members of the Classes could, as a practical matter, be dispositive of the interests of the other members of the Classes not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

23.     The members of the Class are readily identifiable through Defendants' records.

24.     Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## **SUBSTANTIVE ALLEGATIONS**

25.     Consumer Reports succinctly described the situation:

> "As wireless carriers shut down their 3G networks over the coming
> months, millions of cars are losing the ability to automatically
> contact first responders after a crash…
> Automatic crash notification, which alerts first responders via a
> built-in cellular connection, often relies on aging 3G cellular
> networks to connect drivers with emergency services and share a
> vehicle's location. Even though automakers have been aware that
> these networks are shutting down permanently between February
> and July, many manufacturers still relied on it until as recently as
> the 2021 model year.

"Shutting down the 3G network to prioritize newer technologies is positive in the long run," says Alex Knizek, an automotive engineer at CR. "But it is disappointing that some automakers have failed to offer a solution to owners of 3G-connected vehicles, leaving them unable to take advantage of proven and valuable safety features, as well as other beneficial connectivity functions."

The reason is cost savings, according to Roger Lanctot, director of automotive connected mobility at Strategy Analytics, a consulting firm. "It's the last chapter of the automakers adopting the least-expensive connectivity module they can find," he says. Only recently did automakers start future-proofing newer models. "It's a challenge for the industry, but going forward, automakers recognize that they need to put the latest connectivity in."

In addition to crash notification, many vehicles also have an SOS button to contact emergency services, and a lot of those buttons still use a 3G network. It's usually red and located near the vehicle's dome light or rearview mirror. Some cars may also use 3G connectivity for convenience features such as remote unlocking, remote start, emergency roadside assistance, navigation map updates, and vehicle diagnostics. These and other features will no longer work without an upgrade to newer 4G or 5G technology. But because of the way many of these vehicles are designed, it can be difficult or even impossible to upgrade the technology to work with the newer networks, Lanctot says.

"What a mess," says William Wallace, CR's manager of safety policy. "Wireless carriers, federal regulators, and some automakers seem content to leave people out to dry, even if it means they lose access to a potentially lifesaving technology. Every automaker should deliver to its customers the services they've been promised—without charging them extra—and lawmakers should get ahead of the game to keep this from ever happening again in the future."

26.     Historically, sometime around 2009, As the public became increasingly aware of the capabilities and benefit of telematics, car buyers began to demand the connectivity feature from car makers. The benefits are tangible and can be valued and include, *inter alia*,  reduced insurance premiums and vehicle diagnosing capabilities which reduce service costs, and fuel

expenses. *See* https://www.incartelematics.com/faq-items/what-cars-have-telematics (March 2021) last accessed August 27, 2022.

27.    Audi and Volkswagen cars have been sold in the USA since at least the 50s. In or about 2014 Volkswagen began offering its "Car-Net" connected car services. The Car-Net is based on Volkswagen's 3G-only telematic system. According to published reports, Volkswagen's 2014-2019 model years are affected.

28.    Audi's are equipped with "Telematics Control Units" ("telematics") connected to the engine control module which are the instruments which connect the Audi to internet service ("Audi Connect"). *See* http://www.tomorrowstechnician.com/Audi-telematics. December 15, 2020 by Andrew Madiel. Last accessed August 28, 2022.

29.    The Audi Connect and Car-Netfeatures depend on the equipment and technology of the telematics systems, not contracts with service providers.

30.    When 3G became available, Volkswagen installed 3G capable telematics in it vehicles but refused and failed to have the 3G telematics adaptable to the next "generation" of wireless. In the field of mobile connections, a "generation" generally refers to a change in the fundamental nature of the service, non-backwards compatible transmission technology, higher peak bit rates, new frequency bands. Cellular connectivity has characteristic of technology, speed, frequency and spectral capabilities which are constantly being improved upon.

31.    All manufacturers of 3G devices have long known that 3G was "spectrally inefficient" and would be phased out as early as possible. In January 2008, the FCC auction for 700 MHZ spectrum began with Version Wireless and AT&T winning the biggest share after having stated their intentions to support LTE a/k/a 4G LTE.

32.     As early as August 2009, carriers supporting 3G began planning their upgrade to 4G LTE. On December 14, 2009 Telia Sonera became the first carrier to offer customers 4G services. *See* "First in the World with 4G Services," Telia Sonera Press Release December 14, 2009. Accordingly, Defendants knew of the imminent obsolescence of 3G and that industry standards were rapidly advancing.

33.     The Class Vehicles were factory equipped with 3G only telematics devices but by 2014 3G was already being replaced by 4G LTE.

34.     There was no disclosure or even suggestion that Car-Net and/or Audi Connect would be rendered obsolete once 3G was phased out or that the Audi Connect and/or Car-Net features were only temporary or had only a limited life. As to the later model years after 4G became prevalent, Defendants never disclosed that its equipment was one generation behind the standard! To the contrary, Defendant marketed the features as a permanent features of the Class Vehicles.

**The Warranties Provided by VW for Audi-branded and Volkswagen Vehicles**

35.     Audi and Volkswagen provide warranties directly to Plaintiff and other purchases of Class Vehicles. Audi's New Vehicle Limited Warranty covers "defects in manufacturer's material and workmanship," and is limited to "4 years or 50,000 miles from your vehicle's in-service date, which occurs first." This coverage includes the piston rings, pistons, and the engine and its other components. Volkswagen's warranty is substantially similar.

36.     The warranty booklets provided to Plaintiff and consumers by VWGoA are done so with the explicit permission and direction of Audi AG and Volkswagen of North America.

37.     Unlike many car companies, VW does not make it owners' manuals and warranty booklets available online prior to purchase. In order to access such materials on VW's websites,

a consumer needs a Vehicle Identification Number. As such, the full warranty terms are presented to Plaintiff and consumers after the purchase, on a take-it-or-leave-it basis.

38.    Volkswagen and Audi knew of imminent new generations of wireless technology and could have manufactured telematics adaptable to the next generation:

(a)    Defendant Volkswagen is part of 5G AA Automatic Association ("5G AA") a "registered voluntary association" founded in September 2016 with Audi AG, Daimler AG and five major 5G patent holders. "5G AA was created to connect the telecom industry to vehicle manufacturers to develop end-to-end solutions for future mobility and transportation services." Christopher Voight Chairman of the 5G AA Board.  *See* https://5gaa.org last accessed August 27, 2022.

(b)    5G AA promoted CV2X which, as designed, early on provided a migration path to the anticipated 5G based systems and services. *See* https://enom.wikipedia.org/wiki/Vehicle-to-everything last accessed August 27, 2022.

(c)    As a result of Volkswagen's membership in of 5G AA it was very aware of 3G's almost automatic obsolescence as soon as it was introduced.

39.    Defendants could have but chose not to design build or install telematics with downloadable software or physical spare parts which could allow the devices to continue to connect to wireless "generations" following 3G. Defendants had the capability to retrofit its 3G telematics and did so once 3G became the prevalent technology, but refused to design the 3G telematics to be retrofitted.

40.    The 3G phase out does not necessarily automatically disable all devices working on that protocol as it has in the Cars. For example, the iPhone 3GS can connect to Wi-Fi to access internet applications even after the 3G phase out. *See* https://www.zdnet.com/google-

amp/home-and-office/_____/3g-is-shutting-down-here-are-the-gadgets-that-still-rely-on-it-do-you-have-one/ ZDNET, June Wan, April 8, 2022. Last accessed August 27, 2022. Software upgrades have been developed to extend the connectivity life of 3G driven devices. *Id.* Google's Pixel 2 was released in October 2017 with hardware/software that could support 4G LTE and had been pre-armed as early as March 2017. In addition, AT&T connected iPhone 6 and Galaxy S4 Mini and later Samsung Galaxy modes and Pixel 2 Goggle models will all continue to work after the 3G phase out as will older phones from Motorola and LG. While Audi continue to install, promote and sell the 3G only devices, though the end of the Class Period, the major cellular providers have been preparing for years and hence most mobile/smartphone customers are on the 4G and/or 5G network. *See* https://www.verify-this.com/article/mews/verify/technology-verify/you-will-have-to upgrade-replace-phone-to4g-5g-in 2022-if-you-have-3gVerizon-att-T-Mobile-all-phasing-out-3g/635-e733678c-clcd-485d-9793-7f97c003bcb9 last accessed August 28, 2022.

41.     Even after designing and installing the 3G Only Telematics, a technology "fix" for the 3G phase out was not impossible, or even difficult. It would have been costly however, but Defendants could have done it, or planned in advance by recalling cars and installing upgrades to add 4G and/or 5G capabilities.

42.     Defendants also could have integrated a swappable SIM card into its telematics module which could have allowed the system to upgrade itself to 4G LTD or 5G, but they did not do that.

43.     Defendants did not design, build or install the "Devices" to be able to transition to successors to 3G due to a desire to save on manufacturing costs. *Id.* quoting Ruger Lanfot, Director of Automotive Connected Mobility at Strategy Analytics.

44. By contrast, General Motors, whose 2015 and later models of Chevrolet, Buick, GMC and Cadillac all had the proprietary "OnStar" hardware which was also affected adversely by the 3G sunsetting, announced to its customers:

> In 2021, OnStar began working with AT&T on network updates and started executing over-the-air software updates to ensure Members were not impacted by the network transition.

GM committed to automatically send "over-the-air" software updates free of charge to address the 3G phase-out.

45. Moreover, the obsolescence issue was entirely foreseeable. Jeremy Barnes, a spokesperson for Mitsubishi, was quoted in Consumer Reports about the 3G phase out:

> "We foresaw this time coming and designed around it"

## SUNSETTING OF 3G AND LOSS OF
## AUDI CONNECT FEATURES IN THE CARS

46. In February 2019, AT&T announced a plan to "sunset" its 3G network. *See* http://www.business.ATT.com/explore/make-the-switch.html last accessed August 27, 2022. 3G "sunsetting" means that a mobile network operator (or carriers) shuts off the cellular infrastructure required to operate devices based on 3G technology. Other carriers soon followed with their own announcements of phase-outs.

47. Notwithstanding that announcement, Defendants sold hundreds of thousands of 3G Only Telematics equipped vehicles.

48. Audi announced that the "3G Turndown" would affect the following services:

> The following Audi connect services will no longer be available following AT&T's 3G turndown:
>
> Audi connect CARE's SOS and emergency call feature, online roadside assistance, Audi Service Request, and Audi incident assistance, remote lock and unlock, vehicle status report, and stolen vehicle locator

13

Audi connect PRIME's Geo-fencing, speed/curfew alert, valet alert, and Car finder

Audi connect PRIME's Satellite imagery, Online traffic information, Fuel prices, Travel information, Weather, Parking information, Internet radio, Natural voice recognition, Point-of-interest search, and Traffic light information

Audi connect PLUS' Wi-Fi hotspot

**What happens if I am involved in an accident after the services are no longer available?**

Audi connect CARE services like Emergency Call, Roadside Assistance, and Audi Incident assistance will not be available.

49.     Upon information and belief based upon published reports and publicly reported experiences of other car owners, the extent to which different Audi models are affected is as follows:

"Guys, I have done some extensive inquiring regarding the 3G sunset. Here are some additional facts. (Everything that is below is straight from Audi USA. I spent about 3 hours talking to 4 different Audi representatives with Audi USA including have the Technical Service Audi Advisor from my local Audi dealership on the phone at the same time.)
1. 2017 vehicles (certain models which include the S5) are fully covered under Service Action 91CD. (Additional information below.)
2. 2018/2019 vehicles (certain models which include the S5) with a build date between Feb 2017 to March 2018 only get partial coverage under Service Action 91CD. (Additional information below.)
3. 2018/2019 vehicles certain models which include the $5) with a build date after March 2018 are fully covered under Service Action 91CD, "AS LONG AS YOUR WARRENTY HAS NOT EXPIRED" otherwise bullet point 2 applies. (Additional information below.)

ADDITIONAL INFORMATION:

1. Model year 2017 and 2018/2019 (Build date between Feb 2017 to Mar 2018) use 3G for the free portion of your Audi Connect Services
Note: Free Audi connect services include:

a. Remote locking and unlocking
b. Vehicle Status Report
c Parking Location
d. Geofencing Alert
e. Speed Alert
f. Valet Alert
g. Stolen Vehicle Locator
h. Online Audi Service request.
i. Emergency Call

2. Audi Connect Prime and Audi Connect Plus use 4G/4G LTE. (If you pay for these services the sunset of the 3G service DO NOT EFFECT these services.)
3. The only reason that 2017 model year is covered is due to somewhere in the 2017 model year owners manual it states that the "Free" Audi connect services will be provided for 10 years.
4. 2018/2019 vehicles between the build date noted above the "Free" Audi connect services 10 year coverage verbiage was removed from the owners manual.
5. 2019 vehicles and beyond after the Mar 2019 build date only used 4G/4G LTE for "All" Audi connect services.
6. Part number for 4G retrofit is: ZAW-063-239 (Note: Part number is ONLY for the covered retrofit.)

What does the above information mean.

*If your vehicle is a 2017 model, 2018/2019 with a build date after Mar 2018 (And your warranty is active. (Under 50,000 miles) you don't have anything to worry about.)

*If your vehicle is a 2018/2019 model with a build date notated above you are only covered 50%. (When 3G Sunset is complete you will receive a "SOS Emergency Call Function Error" on your dash. Audi can do a program update on your MMI to stop this error. The retrofit of the 4G module is NOT included. (Audi states this will cost you between $600-$1000 dollars to have installed.)"

50.    In addition, an Audi owner of a 3G connected vehicle cannot just ignore the 3G phase out and use his/her own phone devices, because after 3G was phased out, the vehicle persistently flashed "fault" or other dashboard messages.

51.    Volkswagen's inoperable features include loss of the "SOS and emergency call feature, online roadside call assistance, stolen vehicle locator, information assistance, automatic crash notification"; "remote lock and unlock" vehicle health reports; "fuel status"; "send POI"; "boundary alerts"; "speed alerts"; and the vehicle can "no longer transmit or receiver data."

52.    Audi's solution for the 3G phase out is the dealer-installed "Motion for Audi Connect" but that requires cutting into the storage "cubby" on some vehicles and does not restore all prior functions including but not limited to window or door monitors or the "lock/unlock" features.

53.    Volkswagen's solution is to offer owners of the affected vehicles a "special price" of $295 for "Motion by Mojio" which requires the buyer to pay additional subscription fees.

## DEFENDANTS' CONCEALMENT AND OMISSIONS CAUSED LOSS AND DAMAGE TO CAR BUYERS

54.    Had the Defendants truthfully disclosed and reported that its telematics for the Class Vehicles were 3G only, consumers would have been less likely to purchase the cars, would have abstained outright or sought substantial discounts and/or upgrades.  As a proximate cause of Defendants' misrepresentations and warrant breaches detailed in this complaint,  Plaintiff and class members  purchased  Class Vehicles.

55.    Plaintiff and the class members who purchased Class Vehicles did not get the benefit of the bargain  they  struck.  Instead, they received cars whose telematics had planned obsolescence and were therefore of lesser value because the telematics was destined for obsolescence as soon as the models were issued. The cars  that Plaintiff and the class  members

paid for and bargained to receive, while marketed as products with telematics, were of lesser value than as advertised. Accordingly, purchasers of the Cars, including Plaintiff and class members, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Cars.

56.    The Defendants' misrepresentations and other conduct in failing to truthfully disclose to prospective buyers that the cars were 3G Only caused Plaintiff and class members substantial injury in the form of price premiums and overpayments for products and diminished resale value and loss of telematics benefits described herein.

## TOLLING

57.    **Tolling of the Limitations Period** The Defendants had actual knowledge for several years that the marketing and advertising of its Cars was deceptive and misleading.

58.    **Continuing Act Tolling** Beginning in or around 2014, Defendants continuously marketed and sold the Cars to unsuspecting car buyers. The Defendants continuously represented these vehicles could adapt to technology. By continuously repeating these false representations and failing to disclose that the Cars were 3G only the Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Audi might seek to apply.

59.    At all relevant times, the Defendants knew that they were concealing and misrepresenting material facts, but continued to misrepresent and conceal information in its marketing and sales materials. Plaintiff and class members' claims are not time barred.

60.    **Fraudulent Concealment Tolling** State consumer protection laws, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of

limitations for all class members because of Defendants' conduct, including but not limited to concealment and omission of material facts.

61.    This duty to disclose arose, among other things, due to the Defendants' control over manufacturing, marketing and representations about the cars.

62.    The Defendants knew about the 3G Only Limitations of the cars ever since they started selling the Cars.

63.    Despite their knowledge, the Defendants actively concealed this material information from the Plaintiff and other class members.

64.    The Defendants actively concealed the information to continue to profit from their sale and prevent Plaintiff and other class members from bringing suit or otherwise seeking redress.

65.    Plaintiff and class members justifiably relied on the Defendants to disclose the true nature of the Cars they purchased, because the truth was not discoverable by Plaintiff and the other class members through reasonable efforts. Any applicable statute of limitations has been tolled by the Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

66.    Defendants are estopped from asserting that statutes of limitations were running for the duration of time Class Members were unaware of Defendants' misrepresentations.

67.    Defendants are equitably estopped from asserting the statutes of limitations ran against the claims of class members.

68.    Additional information supporting allegations of misrepresentations is in the control of the Defendants.

69.     Material information concealed and/or actively suppressed by the Defendants includes but is not limited to the 3G Only Limitations, described in the preceding paragraphs.

70.     Defendants had a duty to disclose to Class members the 3G Only Limitations.

71.     Defendants breached express and implied warranties and actively and affirmatively misrepresented, concealed and suppressed, both pre-sale and post-sale, the existence of the 3G Only Limitation.

## UNCONSCIONABLITY OF DEFENDANTS' CONDUCT

72.     The warranties accompanying Cars were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties and the purchasers' lack of knowledge that Cars had 3G only limitations.[2]

73.     The contractual terms were unreasonably favorable to the Defendants since the Defendants were fully aware of the 3G only limitations but proposed class representative and class members were unaware. Thus that information imbalance rendered the bargaining position of the Defendants for the sale of Cars grossly disproportionate and vastly superior to

---

[2] New Jersey Uniform Commercial Code § 2-302 (NJ Stat. Ann. § 12A:2-302) states in pertinent part:

(1)     If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2)     When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

that of individual vehicle purchasers, including the proposed class representative and class members.

74.     The Defendants' conduct renders the Cars purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

75.     The durational limitation of the warranties accompanying the Cars is unreasonable and unconscionable since the Defendants actively concealed the 3G only limitations. The proposed class representatives and class members had no notice of or ability to detect the issue.

76.     Defendants engaged in unconscionable commercial practices.

77.     Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. The Defendants' upper-level management orchestrated this wrongful conduct.

78.     The proposed class representative and class members operated and maintained their Cars in conformity with the respective owner's manual and Service and Warranty requirements.

79.     The Defendants violated the consumer protection laws of New Jersey together with all other state consumer protection laws with their unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to the proposed class representative and class members.

80.     Car owners have sustained an ascertainable financial loss. Individuals who own or have owned Cars also sustained diminution of the resale value of their Cars.

81.     The proposed class representative and class members have not received the benefit of their bargain concerning their respective purchase of Cars.

82.     If the proposed class representative and class members had been made aware of the 3G Only limitations in their respective Cars and the attendant ramifications of value, safety and care, they would not have purchased the Cars or would have paid less for their vehicles.

83.     As a direct result of these knowing misrepresentations and omissions, the proposed class representative and class members purchased Cars and sustained economic harm since they purchased vehicles worth considerably less than represented. These misrepresentations diminish the value and increased cost of vehicle ownership.

84.     The wrongful conduct of the Defendants in violation of the consumer protection laws of New Jersey together with all other similar state consumer protection laws occurred within the limitations period set out in the respective statutes and/or the limitations period as tolled by the Defendants' conduct.

**THE INJURIES SUFFERED BY PLAINTIFF AND OTHER CLASS MEMBERS**

85.     Plaintiff and all purchasers and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury and been damaged by Defendants' unconscionable practices and breaches of its warranties. Specifically, Plaintiff and all members of the putative Class paid for a Car that was represented and warranted to be operable for as long as the car was operable but the cars they received had 3G Only Limitations which eventually rendered the features inoperable.

86.     Plaintiff and all members of the putative Classes received vehicles that were substantially less valuable than the vehicles that Defendants represented and warranted to them, due to the failure of Defendants to deliver a specific, bargained-for characteristic.

## COUNT I

**Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.***
**(On Behalf of the Nationwide  Class or Subclasses of State Buyers)**

87.      Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

88.      Plaintiff brings this claim against Defendants on behalf of herself and the Class.

89.      Defendants have engaged in deceptive, unfair, fraudulent and/or misleading

commercial practices in the advertising, promotion, marketing, distribution, selling and leasing

of Cars.

90.      Defendants represented that Cars had characteristics, uses, benefits, or qualities

that they did not have.

91.      In its advertising, promotion,  and marketing of the Cars, Defendants

misrepresented material facts to Plaintiff  and other members of the Class with respect to the

vehicles' qualities. As detailed above,  Defendants deceptive advertising, promotion,  and

marketing of the Cars emanated  from New Jersey.

92.      Defendants' conduct was objectively  deceptive and had the capacity to deceive

reasonable  consumers under the circumstances.  The fact that the cars' telematics were 3G only

was a material fact to which a reasonable  consumer would attach importance  at the time of

purchase  or lease.

93.      Defendants' practices,  as detailed herein,  violated the New Jersey Consumer

Fraud Act, N.J.S.A.  56:8-1,  et seq.

94.      As a direct and proximate result of Defendants' violations of the New Jersey

Consumer Fraud Act, Plaintiff and other members of the Class have suffered ascertainable

losses, which include but are not limited to, the diminished value of their vehicles and the failure

to receive the benefit of the bargain promised  to them by Defendants (i.e.,  the vehicles they

22

received were less valuable at the time of purchase or lease than the vehicles Defendants promised to them); and the substantial out-of-pocket costs which will be required to make Audi Connect operable. Accordingly, Plaintiff and other members of the Class were harmed by, and Defendants are liable for, Defendants' actions in violation of the New Jersey Consumer Fraud Act.

95.     Defendants are liable to Plaintiff and the members of the Class for treble damages caused by their deceptive conduct, and for reasonable attorneys' fees as set forth in the New Jersey Consumer Fraud Act.

## COUNT II

**Violation Of The New York General Business Law § 349(A) Against Defendants**

96.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above.

97.     The elements of a cause of action under NYGBL 349(a) is that: (1) the challenged transactions were "consumer-oriented"; (2) Defendants engaged in deceptive or materially misleading acts or practices; and (3) Plaintiffs was injured by reason of Defendants' deceptive or misleading conduct.

98.     Defendants practices are deceptive and materially misleading.

99.     Considering the greater knowledge and experience of Defendants in relation to Plaintiffs and the members of the Class as to the telematics, the allocation of the risks between the parties, and similar public policy concerns, these practices are deceptive and therefore, violate the GBL.

100.    As a result of the foregoing defendants are in violation of NY GBL § 349 and Plaintiffs and Class members have been injured thereby.

## COUNT III

**Breach of Express Warranty by Description in Violation of N.J. Stat.§ 12A:2-313(b)**
**(On Behalf of the Nationwide Class Or Alternatively State Subclasses)**

101.    Plaintiff incorporates the foregoing paragraphs  as if fully set forth herein.

102.    Plaintiff brings this claim against Defendant on behalf of themselves  and the Nationwide  Class pursuant to Section 2-313(b) of the Uniform Commercial Code,  adopted under New Jersey law pursuant to N.J.  Stat.  §  12A:2-313(b).  That section provides:  "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall  conform to that description."

103.    Defendants described Audi Connect and Car-Net in its advertisements, press releases,  specifications provided to dealers,  information provided to the press, and through other media as adaptable to changing technologies which it knew would be communicated  to consumers either directly or indirectly. Defendants' description included that the Car Connect Audi Connect would function as represented for the life the Cars indefinitely were express warranties by description  under N.J. Stat.  $  12A:2-313(b).

104.    Defendants' express warranties  by description were designed to induce Plaintiff and other members of the Class to purchase the Cars.

105.    Defendants express warranties  by description became part of the basis of the bargain  into which Plaintiff and other members  of the Class entered when they purchased the Cars.

106.    Given the modern  significance  of compatibility  of vehicles with cell phones, protocols and wireless standards as represented  by Defendants'  prominent  representations. The natural tendency of the descriptions  of Car-Net and/or Audi Connect was to induce the purchase or lease of the Cars.

107.    Defendants' breached express warranties by description  with Plaintiff and other members  of the Class by delivering Cars that were not,  and never could be,  compatible  with later generators of service.

108.    By delivering a vehicle with Car-Net and/or Audi Connect limited to 3G only and lacking compatibility with next generations, Defendants has breached  its express warranty  by description  to the purchasers  and lessees  of the Cars, including  the Plaintiff and members  of the Class.

109.    As a direct and proximate result of Defendants' breach of its express warranties by description  with Plaintiff  and the members  of the Class, Plaintiff and the members  of the Class did not receive  the full benefit of their bargain  and suffered damage by receiving  vehicles that were less valuable than the vehicles  that Defendants had represented  to them,  and by paying  out-of-pocket  costs in order to ensure that the Cars Car-Net and/or Audi Connect features could operate on next generation facilities.

110.    Defendants are liable to Plaintiff and the members of the Class for all damages caused by Defendants' breach  of express warranties  by description.

<u>**COUNT IV**</u>

**Violation Of Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)1(A)**
**(On Behalf of the Nationwide Class)**

111.    Plaintiff incorporates the foregoing paragraphs as if set forth fully in this count.

112.    This claim is brought as a state law claim under 15 U.S.C. § 2310(d)(l)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

113.    The proposed class representative and class members  are consumers within the context of the Magnuson-Moss Warranty Act,  15 U.S.C.  § 2301(3).

114.    Cars are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.SC. $ 2301(1).

115.    The Defendants are suppliers and/or warrantors within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

116.    The Defendants' express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.$.C. $ 2301(6). Cars implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by§ 2308.

117.    The Defendants breached the express and implied warranties accompanying Class Vehicles as described in this complaint.

118.    The Magnuson-Moss Warranty Act provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

119.    The Defendants' breach of their express and implied warranties was the direct and proximate cause of the proposed class representative and proposed class members' financial harm as more fully set out in the preceding warranty counts, and constitutes a violation of the Magnuson•Moss Warranty Act.

120.    Affording Defendants a reasonable opportunity to cure their breach of written warranties for Class Vehicles would be unnecessary and futile. The proposed class representative and class members have already attempted to secure coverage for their battery-related repairs without success.

121.    At the time of sale or lease of each Class Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to

rectify the situation and/or disclose the limitation, as described in this complaint. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Cars resort to an informal dispute resolution procedure and/or afford the Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

122.    The proposed class representative and class members would suffer economic hardship if they returned their Cars but did not receive the return of all payments made by them.

123.    Wherefore, proposed class representative and proposed class members demand judgment against the Defendants including multiple monetary damages, interest, costs and attorney's fees.

## COUNT V

### Unjust Enrichment

124.    Plaintiff incorporates the foregoing paragraphs as if set forth fully in this count.

125.    The Defendants benefited financially from their breaches of warranty and misrepresentations as described in this complaint.

126.    The proposed class representative and class members sustained monetary damages as described in this complaint.

127.    Allowing the Defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

128.    The proposed class representative and class members request that the Defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the Defendants as a result of

their wrongful conduct. The proposed class representative and class members should be designated beneficiaries of the trust and obtain restitution for their out-of-pocket expenses caused by the Defendants' conduct.

129.    Wherefore, the proposed class representative and class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

a.      Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiff as class representative and his attorneys as class counsel;

b.      Awarding actual damages to Plaintiff and the Members of the Class;

c.      Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

d.      Awarding such other and further relief which the Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 5, 2022

SQUITIERI & FEARON, LLP


By:*/s/Lee Squitieri*
        Lee Squitieri
305 Broadway
7th Floor
New York, New York 10007
(212) 421-6492